UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| SHIVA STEIN, | : |
|       Plaintiff, | : Civil Action No. _____ |
| v. | : **COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** |
| CADENCE BANCORPORATION, PAUL B. MURPHY, JR., JOSEPH W. EVANS, MARC J. SHAPIRO, J. RICHARD FREDERICKS, WILLIAM B. HARRISON, JR., VIRGINIA A. HEPNER, PRECIOUS W. OWODUNNI, KATHY N. WALLER, and J. THOMAS WILEY JR., | : **JURY TRIAL DEMANDED** |
|       Defendants. | : |

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Cadence Bancorporation ("Cadence or the "Company") and the members of Cadence's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Cadence by BancorpSouth Bank, a Mississippi state chartered bank ("BancorpSouth") and BancorpSouth's affiliates.

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on May 27, 2021 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Cadence will merge with and into BancorpSouth with BancorpSouth surviving the merger (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Cadence common share issued and outstanding will be converted into the right to receive 0.070 shares of Bancorp common stock for each share of Cadence common stock owned (the "Merger Consideration").

3. As discussed below, Defendants have asked Cadence stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, Goldman Sachs & Co. LLC ("Goldman Sachs") and J.P. Morgan Securities LLC ("J.P. Morgan" and together with Goldman Sachs, the "Financial Advisors"), in support of their fairness opinions, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Cadence stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Cadence in incorporated in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Cadence common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Paul B. Murphy, Jr. has served as a member of the Board since 2011 and is the Chairman and Chief Executive Officer of the Company.

11. Individual Defendant Joseph W. Evans has served as a member of the Board since 2019 and is the Vice Chairman of the Company.

12. Individual Defendant Marc J. Shapiro has served as a member of the Board since 2018.

13. Individual Defendant J. Richard Fredericks has served as a member of the Board since 2017.

14. Individual Defendant William B. Harrison, Jr. has served as a member of the Board since 2017.

15. Individual Defendant Virginia A. Hepner has served as a member of the Board since 2019.

16. Individual Defendant Precious W. Owodunni has served as a member of the Board since 2019.

17. Individual Defendant Kathy N. Waller has served as a member of the Board since 2019.

18. Individual Defendant J. Thomas Wiley Jr. has served as a member of the Board since 2019.

19. Defendant Cadence is incorporated in Delaware and maintains its principal offices at 2800 Post Oak Boulevard, Suite 3800, Houston, Texas 77056. The Company's common stock trades on the New York Stock Exchange under the symbol "CADE."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.  The Proposed Transaction**

22. Cadence is a financial holding company. Through its subsidiary, Cadence Bank, National Association, it provides banking and wealth management services to businesses, high net worth individuals, business owners, and retail customers. It operates through Banking and Financial Services segments. The Company accepts checking, savings, money market, time, and other deposit accounts. Its loan products include commercial and industrial loans; commercial and

4

residential real estate loans; other consumer loans, such as personal, family and household purposes, automobiles, and boat loans; and shared national credits. The Company also offers debit and credit cards; wealth management and other fiduciary, and private banking services; employee health and liability, and workers' compensation insurance products and services; and treasury, payroll, human resources, payroll cards, treasury management, merchant, employee and payroll benefits, automated clearing house, lock-box, remote deposit capture, foreign exchange, and other treasury services, as well as online, mobile, and telephone banking services. As of December 31, 2020, it operated 98 branch offices in Alabama, Florida, Georgia, Mississippi, Tennessee, and Texas. The Company also serves through ATMs and ITMs. Cadence was founded in 1885 and is headquartered in Houston, Texas.

23. On April 12, 2021, Cadence and BancorpSouth jointly announced that they had entered into a proposed transaction:

> TUPELO, Miss. and HOUSTON, April 12, 2021 /PRNewswire/ -- BancorpSouth Bank (NYSE: BXS) ("BancorpSouth") and Cadence Bancorporation (NYSE: CADE) ("Cadence"), the parent company of Cadence Bank, N.A., jointly announced today that they have entered into a merger agreement under which the companies will combine in an all-stock merger with a total market value of more than $6 billion to create a leading Texas and Southeastern regional bank.
>
> Under the terms of the merger agreement, which was unanimously approved by the Boards of Directors of both companies, Cadence shareholders will receive 0.70 shares of BXS for each share of CADE they own. Additionally, the agreement allows for a one-time special cash dividend to CADE shareholders of $1.25 per share in conjunction with the closing of the merger. BancorpSouth shareholders will own approximately 55% and Cadence shareholders will own approximately 45% of the combined company.
>
> The company will combine the aesthetics of both brands and logos and operate as Cadence Bank. The bank will have dual headquarters in Tupelo, MS and Houston, TX, with operations centers in Tupelo,

MS and Birmingham, AL as well as specialty sites in Macon, GA; Starkville, MS; and Houston, TX.

Dan Rollins will be the Chairman and Chief Executive Officer and Paul Murphy will serve as Executive Vice Chairman of the combined company. The board of directors will initially be comprised of 20 directors – 11 from BancorpSouth and nine from Cadence.

Dan Rollins commented: "Cadence has built an impressive commercial banking franchise that when combined with the strengths of our team at BancorpSouth seems to be a perfect fit. This strategic merger will allow us to expand our reach and offerings with minimal overlap in our existing branch network. Culturally speaking, our mission and values align really well together. Mergers are all about people, and what's important to note here is that our leadership teams are in sync. By joining forces, it's easy to see that we'll be able to make a significant impact on our customers and communities while driving long-term shareholder value."

"I am thrilled to partner with BancorpSouth," said Paul Murphy. "I have great respect for the franchise they have built over the last 145 years, beginning in my home state of Mississippi. The BancorpSouth community banking franchise is top tier and complements Cadence's expertise in middle-market commercial banking seamlessly. We look forward to delivering significant value to our shareholders, driven by meaningful synergies and our shared banking philosophy to put the client first. I was impressed with the team at BancorpSouth early on, and I grow even more so the more I get to know them. Like us, they really care about their people. The scale of our combined bank, our collective talent, our similar cultures and our footprint in some of the fastest-growing markets in the country have us extremely excited about the future."

**Strategically Compelling for Both Organizations**

- Builds a stronger banking franchise with relationship-focused financial services and **better opportunities for employees, customers, communities and shareholders.**
- **Builds immediate scale in highly attractive markets throughout Texas and the Southeast.** Creates the 5th largest bank headquartered in the combined nine-state footprint, with presence in seven of the top ten largest MSAs therein.
- **Combines BancorpSouth's community banking focus with Cadence's commercial banking expertise.**

- **Merges two historic institutions – BancorpSouth and Cadence have 145 and 134 years of experience, respectively.**
- **Positions the company for continued growth.** Strengthens balance sheet, capital, and reserve levels, enabling continued growth trajectory.
- **Low-risk combination.** Thorough mutual diligence performed on all key business areas with conservative overlay. Both companies have significant M&A integration expertise.

**Financially Attractive Metrics for Shareholders**

- **Significant earnings per share accretion.** 17% accretion to each of BancorpSouth's and Cadence's earnings per share in 2022 (assuming fully realized cost savings for illustrative purposes) and 14% if 75% of cost savings are realized.
- **Tangible book value accretive.** Transaction expected to be immediately accretive to tangible book value per share at close.
- **Leading pro forma profitability.** Among a peer group of $30-$60 billion in asset banks nationwide, the combined company is estimated to have the 3rd best return on tangible common equity and efficiency ratio, based on consensus earnings estimates.
- **Robust capital and reserve coverage.** Pro forma CET 1 ratio of 11.3% and ACL / loans of 2.5% estimated at the close of the transaction.

**Beneficial for Customers, Communities and Employees**

- Expands breadth of products and services available to customers.
- The combined companies will be able to make more investments in customized technology solutions.
- Environmental, social and governance principles are embedded in both cultures.
- Employees of the combined companies invested more than 24,000 service hours towards improving their communities.

**Executive Leadership**

- Dan Rollins, *Chairman and Chief Executive Officer*
- Paul Murphy, *Executive Vice Chairman*
- Chris Bagley, *President*
- Hank Holmes, *Chief Banking Officer*
- Valerie Toalson, *Chief Financial Officer*

>**Approval and Timing**
>The merger is expected to close in the fourth quarter of 2021, subject to the satisfaction of customary closing conditions, including the receipt of customary regulatory approvals and approvals of shareholders of each company.
>
>**Transaction Advisors**
>Keefe, Bruyette & Woods, *A Stifel Company*, served as exclusive financial advisor to BancorpSouth, with Sullivan & Cromwell and Alston & Bird serving as legal advisors.
>
>Goldman Sachs and J.P. Morgan served as lead financial advisors to Cadence and Piper Sandler also advised. Wachtell, Lipton, Rosen & Katz served as legal advisor.

\* \* \*

24.     The Board has unanimously approved the Proposed Transaction. It is therefore imperative that Cadence's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.      The Materially Incomplete and Misleading Proxy Statement**

25.     On May 27, 2021, Cadence filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

26. The Proxy Statement fails to provide material information concerning financial projections prepared by Cadence management and relied upon by the Financial Advisors in their analysis. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27. The Proxy Statement omits the pro forma projections that were used by Goldman Sachs to render its financial analyses and fairness opinion. *See* Proxy Statement at 76.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

28. With respect to Goldman Sachs' *Illustrative Present Value of Future Stock Price Analysis for Cadence on a Stand-Alone Basis*, the Proxy Statement fails to disclose: (i) the basis for applying illustrative one year forward price to EPS multiples of 10.5x and 12.5x to the estimates of the EPS of Cadence on a stand-alone basis for 2022, 2023, and 2024, respectively; and (ii) the inputs and assumptions underlying the use of a 13% discount rate.

29. With respect to Goldman Sachs' *Illustrative Discounted Dividend Analysis for Cadence on a Stand-Alone Basis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the use of discount rates ranging from 10.5% to 15.5%; (ii) the estimates of the cost of equity for Cadence on a stand-alone basis; (iii) the implied distributions to Cadence shareholders on a stand-alone basis over the period beginning December 31, 2020 through December 31, 2025; (iv) the range of illustrative terminal values for Cadence as of December 31, 2025; (v) the basis for applying a illustrative price to EPS multiples ranging from 10.5x to 12.5x

to the estimate of Cadence's terminal year net income on a stand-alone basis; and (vi) the total number of fully diluted shares of Cadence Class A common stock.

30. With respect to Goldman Sachs' *Illustrative Present Value of Future Stock Price Analysis for BancorpSouth on a Stand-Alone Basis*, the Proxy Statement fails to disclose: (i) the basis for applying illustrative one year forward price to EPS multiples of 12.5x and 14.5x to the estimates of the EPS of BancorpSouth on a stand-alone basis for 2022, 2023, and 2024, respectively; and (ii) the inputs and assumptions underlying the use of a 9.0% discount rate.

31. With respect to Goldman Sachs' *Illustrative Discounted Dividend Analysis for BancorpSouth on a Stand-Alone Basis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the use of discount rates ranging from 8.0% to 10.0%; (ii) the estimates of the cost of equity for BancorpSouth on a stand-alone basis; (iii) the implied distributions to BancorpSouth shareholders on a stand-alone basis over the period beginning December 31, 2020 through December 31, 2025; (iv) the range of illustrative terminal values for BancorpSouth as of December 31, 2025; (v) the basis for applying a illustrative price to EPS multiples ranging from 12.5x to 14.5x to the estimate of BancorpSouth's terminal year net income on a stand-alone basis; and (vi) the total number of fully diluted shares of BancorpSouth common stock.

32. With respect to Goldman Sachs' *Illustrative Present Value of Future Stock Price Analysis for Cadence Shares on a Pro Forma Basis*, the Proxy Statement fails to disclose: (i) the basis for applying illustrative one year forward price to EPS multiples of 11.5x and 13.5x to the estimates of the EPS of BancorpSouth on a pro forma basis for 2022, 2023, and 2024, respectively; and (ii) the inputs and assumptions underlying the use of a 10.75% discount rate.

33. With respect to Goldman Sachs' *Illustrative Discounted Dividend Analysis for Cadence Shares on a Pro Forma Basis*, the Proxy Statement fails to disclose: (i) the inputs and

10

assumptions underlying the use of discount rates ranging from 9.0% to 12.5%; (ii) the estimates of the cost of equity for Cadence on a pro forma basis; (iii) the implied distributions from BancorpSouth's shareholders on a pro forma basis over the period beginning December 31, 2020 through December 31, 2025; (iv) the range of illustrative terminal values for BancorpSouth on a pro forma basis as of December 31, 2025; (v) the basis for applying a illustrative price to EPS multiples ranging from 11.5x to 13.5x to the estimate of BancorpSouth's terminal year net income on a pro forma basis; and (vi) the total number of fully diluted shares of BancorpSouth common stock and the number of shares of BancorpSouth common stock anticipated to be issued in the Proposed Transaction.

34. With respect to J.P. Morgan's *Dividend Discount Analysis – Cadence Stand-Alone*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the use of discount rates ranging from 11.0% to 13.0%; (ii) the estimates of the cost of equity for Cadence on a stand-alone basis; (iii) the basis for applying NTM P/E multiples ranging from 10.0x to 12.0x to Cadence estimated adjusted net income for the terminal year (2026); and (iv) the range of illustrative terminal values for Cadence.

35. With respect to J.P. Morgan's *Dividend Discount Analysis – BancorpSouth Stand-Alone*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the use of discount rates ranging from 10.0% to 12.0%; (ii) the estimates of the cost of equity for BancorpSouth on a stand-alone basis; (iii) the basis for applying NTM P/E multiples ranging from 12.0x to 14.0x to BancorpSouth estimated adjusted net income for the terminal year (2026); and (iv) the range of illustrative terminal values for BancorpSouth.

36. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

37.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

39.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by Citi and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

40.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed

to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

41. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

42. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. The Individual Defendants acted as controlling persons of Cadence within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as

directors of Cadence, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Cadence, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Cadence, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

47. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

50. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: May 28, 2021

**OF COUNSEL:**

**MELWANI & CHAN LLP**
Gloria Kui Melwani
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

**RIGRODSKY LAW, P.A.**

By: */s/ Gina M. Serra*
Seth D. Rigrodsky (#3147)
Gina M. Serra (#5387)
Herbert W. Mondros (#3308)
300 Delaware Avenue, Suite 210
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: sdr@rl-legal.com
Email: gms@rl-legal.com
Email: hwm@rl-legal.com

*Attorneys for Plaintiff*